**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
-------------------------------x
WEEKS MARINE, INC.            :
                             :
            Plaintiff,       :     Civ. No. 04-1703 (DRD)
        v.                   :
                             :
HANJIN SHIPPING; J.P. SAMARTZIS :
MARITIME ENTERPRISES CO.;    :
MARECALMA SHIPPING CO.; and  :
M/V HANJIN VANCOUVER, in rem, :
                             :
            Defendant.       :
-------------------------------x
```

OPINION

Ronald Betancourt, Esq.
Todd Patrick Kenyon, Esq.
BETANCOURT, VAN HEMMEN, GRECO & KENYON
114 Maple Avenue
Red Bank, NJ 07701

        Attorneys for Plaintiff


Patrick M. DeCharles, II, Esq.
CICHANOWICZ, CALLAN, KEANE, VENGROW & TEXTOR, LLP
75 Montgomery Street
Suite 200
Jersey City, NJ 07302

        Attorneys for Defendant

**DEBEVOISE, Senior District Judge**

### PROCEDURAL HISTORY

The Plaintiff, Weeks Marine, Inc. ("Weeks") filed an

admiralty suit in this court, pursuant to 28 U.S.C. § 1333

against Defendants, Hanjin Shipping Co., Ltd. ("Hanjin"), J.P.

Samartzis Maritime Enterprises Co. ("Samartzis"), Marecalma Shipping Co. ("Marecalma"), and the M/V HANJIN VANCOUVER, in rem ("M/V HANJIN"), seeking damages for a collision between the vessel M/V HANJIN and plaintiff's barge WEEKS 65. On June 16, 2004, a default judgment as to Hanjin was entered in favor of Weeks in the total amount of $32,617.95. This default judgment was subsequently vacated on July 28, 2004. Hanjin now moves for summary judgment dismissing Weeks's complaint. Hanjin's motion will be granted.

## I. RELEVANT FACTS

On September 23, 2003, the M/V HANJIN collided with the barge WEEKS 65 while navigating with the assistance of three tugs in the vicinity of Berth 92 at Port Elizabeth, New Jersey.[1] Complt. ¶¶ 9, 10; Def. Memo of Law at 1. Equipment adjacent to the barge WEEKS 65, known as "King Pile 147," was also damaged. Complt. ¶ 11. It is undisputed that the collision occurred after the M/V HANJIN was unable to dock at berth 86, due to a lack of bollards,[2] and was being moved to berth 96. Pl. Memo of Law at

---

[1]It is undisputed that the WEEKS 65 was stationary and spudded down at the time of the collision. Pl. Complt. ¶ 5; Def. Memo of Law at 1. However, there is evidence in the record that Weeks's barges were incorrectly positioned in such a way that they protruded out into the waterway. Pl. Ex. 1.

[2]"Bollard" defined as a "Single or double cast steel posts secured to a wharf, or pier and used for mooring vessels by means of lines extending from the vessel and fastened to the post." *International Maritime Dictionary 2d. ed.* at 79 (Van Nostrand Reinhold Company 1961).

2

2; Def. Reply Memo at 8.

At all relevant times, Weeks was the owner of both the damaged barge WEEKS 65 and the adjacent equipment, "King Pile 147." Complt. ¶ 5. Hanjin was the time charterer of the vessel, M/V HANJIN, pursuant to a time charter agreement.[3] Id. ¶ 6. Marecalma was the owner of the vessel. Id. ¶ 7; Def. Memo of Law at 2. And, Samartzis was the manager of the vessel. Complt. ¶ 8. Under the time charter, discussed *infra*, the owner of the vessel, Marecalma, remained responsible for navigation, acts of the pilot, tugboat and crew. Time Charter Contract ¶ 26. There is no evidence in the record that the time charter contract was altered in anyway from the original agreement.[4]

In support of this motion, Hanjin filed a Memorandum of Law, a sworn declaration from K.S. OH, the Assistant Manager of Hanjin's vessel chartering department, and the original time charter contract. Relying on this documentation, *inter alia*, Hanjin points out that it is undisputed that it was the time charter of the M/V HANJIN. Pl. Complt. ¶ 6; Def. Memo of Law at 2. Accordingly, Hanjin argues that it cannot be held liable

---

[3]"Under a time charter, the charterer engages for a fixed period of time a vessel, which remains manned and navigated by the vessel owner, to carry cargo wherever the charterer instructs." Schoenbaum, *Admiralty and Maritime Law*, § 11-1, at 2 (4th ed. 2004).

[4]Weeks, in its opposition papers, contends that an unsigned and unverified telefax message from the manager of the vessel, Samartzis, to Hanjin, establishes that Hanjin was responsible for all berthing and tugging operations. Pl. Ex. 2.

3

because, as a matter of law, a time charterer is not liable for damage resulting from the navigation of a vessel, absent a showing of an independent act of negligence.  Id. at 1; Def. Reply Memo of Law at 10 n5.

In opposition to this motion, Weeks filed a Memorandum of Law supported by its own attorney's declaration and exhibits obtained in discovery from Hanjin.[5]  Pl. Declaration at 1.  Weeks argues that: (1) it is an incorrect statement of law to assert that a time charter can "never" be liable for negligent acts; and, (2) the exhibits, if accepted as true, show disputed material facts which preclude granting summary judgment in this case.  Pl. Memo of Law at 1, 2.  Hanjin objects to all of Weeks's exhibits on the ground that the documents fail to meet the requirements of FED. R. CIV. P. 56(e) that opposing affidavits shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence.  Hanjin denies the assertions made therein and contends that even if the court were to accept them as true, they do not raise an issue of material fact.  Def. Reply Memo of Law at 8 n3.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted if after

_____

[5]These exhibits include: (1) Exhibit 1-Master's Report of Incident dated September 24, 2003; (2) Exhibit 2-Owner's letter dated March 19, 2004; and, (3) Exhibit 3-Hanjin Shipping's Surveyor's Report dated December 8, 2003.

4

drawing all inferences in favor of the moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c); Apalucci v. Agora Syndicate, Inc., 145 F.3d 630, 631 (3d Cir. 1998); Todaro v. Bowman, 872 F.2d 43, 46 (3d Cir. 1989); Davis v. Portline Transportes Maritime Int'l, 16 F.3d 532, 536 n. 3 (3d Cir. 1994); Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A genuine issue may exist if the record taken as a whole could lead a rational trier of fact to find for the party opposing summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Under FED. R. CIV. P. 56(c), the moving party bears the burden of pointing out to the district court an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The court will take the nonmoving party's allegations of fact as true. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). If the moving party meets its burden, the opposition bears the burden of

5

"set[ting] forth specific facts showing that there is a genuine issue for trial." Fᴇᴅ. R. Cɪᴠ. P. 56(e).

## B. HANJIN'S MOTION FOR SUMMARY JUDGMENT

In order for Weeks to prevail in opposing Hanjin's summary judgment motion, Weeks must prove that Hanjin was independently negligent and that its negligence caused the collision between the M/V HANJIN and Weeks's barges.  The Court of Appeals for the Fifth Circuit set forth the applicable rule regarding liability of a time charter for negligence in In the Matter of P&E Boat Rentals, Inc. 872 F.2d 642 (5ᵗʰ Cir. 1989), the court held:

> A time charter "who has no control over the vessel, assumes no liability for negligence of the crew or unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise."  Mallard v. Aluminum Co. Of Canada, Ltd., 634 F.2d 236, 242 n5 (5ᵗʰ Cir. 1989), cert. denied, 454 U.S. 816 (1981).

The Court of Appeals, however, noted in Graham v. Milky Way Barge, 811 F.2d 881 (5ᵗʰ Cir. 1987), and P&E Boat Rentals that there is an exception to the general rule of non-liability for a time charterer if the charterer is *independently* negligent in conducting its charter activities.  In Graham, the court upheld a judgment against Chevron, a time charter, stating:

> Chevron's chief argument is that as a time charter it has no liability for the unseaworthiness of the chartered vessel or the negligence of its crew.  Chevron cites many cases, both in [the Fifth] Circuit and others, where the time charterer was not held liable for the unseaworthiness of a chartered vessel or the negligence of its crew.  Chevron's argument, however legally sound it may be, is inapposite to the findings by the district court.  The district court found not that Chevron was responsible for any unseaworthiness of the vessel or negligence on the part of the crew but that

6

Chevron's *negligence was independent* of any arising from the maintenance or operation of the [vessel].  Graham 811 F.2d at 892-93.  (emphasis added).

Additionally, the court in P&E Boat Rentals, found a time charter independently negligent in directing the boat owner to travel at excessive speeds in heavy fog or face possible contract termination.  872 F.2d at 647-48.

Inasmuch as Hanjin seeks summary judgment on the ground that as a time charter it cannot be held liable, it is important to analyze the contractual agreement, known as the charter party,[6] between Hanjin and Theoktisto Shipping S.A., the owner of the M/V HANJIN.[7]  This contract, printed on the standard New York Produce Exchange form, explicitly allocates the responsibilities between the time charterer and the owner of the vessel.  The court in Kerr-McGee Corp. v. Ma-Ju Marine Services, Inc., 830 F.2d 1332 (5th Cir. 1987), described the unique characteristics of a time charter contract:

> In the traditional time-charter arrangement, the charterer directs the commercial activities of the boat, but "the owner's people continue to navigate and manage the vessel....The time charter is used where the charterer's affairs make it desirable for him to have tonnage under his

---

[6]"The term 'charter party,' often shortened to 'charter,' designates the document in which are set forth the arrangements and contractual engagements entered into when one person (the 'charterer') takes over the use of the whole of a ship belonging to another (the 'owner')."  G. Gilmore & C. Black, *The Law of Admiralty* § 4-1 at 193 (2d. ed. 1975).

[7]According to the record, Theoktisto Shipping S.A. is the disponent owner of the M/V HANJIN, while Marecalma Shipping, Co. is the registered owner of the vessel.  Def. Declaration at 2.

7

control for a period of time, without undertaking the
responsibilities of ship navigation and management or the
long-term financial commitments of vessel ownership." G.
Gilmore & C. Black, *The Law of Admiralty*, § 4-1, at 194 (2d.
ed. 1975)..."Possession and control remain with the owner
and the ship is operated by its regular crew, but the
charterer determines the ship's routes and destinations."
Migut v. Hyman-Michaels Co., 571 F.2d 352, 355 (6th Cir.
1978).  Kerr-McGee, 830 F.2d at 1340-41.

The contract between Hanjin and the owner of the vessel
makes it clear that there has not been a reallocation of the
traditional duties as between the time charterer and the vessel
owner.  Pursuant to the contract, at paragraph 26, it is provided
that:

> "26. Nothing herein stated is to be construed as a demise of
> the vessel to the Time Charterers.  The owners to remain
> responsible for the navigation of the vessel, ***acts of pilot
> and tugboat, etc*** insurance, crew, and all other matters,
> same as when trading for their own account."  Time Charter
> Contract ¶ 26.

Under this provision the owner of the vessel is responsible
for the navigation of the vessel.  Since the incident occurred
while the M/V HANJIN was *moving* from one dock to another, this
constitutes "navigation" within the meaning of the rule.  See
Delaware River Terminals, Inc. v. M/S ANCORA, 253 F.Supp. 884
(E.D. Pa. 1966) (A time charter is not responsible for navigation
of the ship, and docking is part of navigation).  See also
Luckenbach v. Insular Line, 186 F. 327, 328 (2nd Cir. 1911) ("It
has been repeatedly held that this form of time charter is not a
demise of the ship....the navigation of the ship during the time

8

of the charter is in the hands of the owner.  We consider the docking of the vessel a part of her navigation).  <u>See also</u> <u>Matute v. Lloyd Bermuda Lines, Ltd.</u>, 931 F.2d 231, 235 (3rd Cir. 1991) (overruled in part on different grounds) ("A 'time charter' contracts not for the vessel itself but for a specific service of the vessel, such as the transport of goods, which is rendered by the owner's ship, captain, and crew.  As such, the time charterer is not subject to the traditional owner's maritime liability....").  Therefore, Hanjin, as time charter, absent any evidence of independent negligence, cannot be held liable.

### C. WEEKS'S OPPOSITION ARGUMENT

In opposition to the motion, Weeks does not dispute that Hanjin is a time charterer.  Pl. Memo of Law at 1, 2.  Rather, Weeks argues that it is an inaccurate statement of law to assert that a time charterer can "never" be liable for vessel operational issues.  <u>Id</u>. at 1.  It is correct that, in certain circumstances, time charterers may be held liable for independent negligent acts.  <u>See, e.g.</u>, <u>Helaire v. Mobil Oil Co.</u>, 709 F.2d 1031, 1041-42 (5th Cir. 1983) (time charterer liable for injury resulting from decision to continue unloading operations in extremely dangerous weather); <u>Graham</u>, 824 F.2d at 388 (court upheld a finding that, under the circumstances, the time charterer was liable for death and injury because the charterer sent vessel into unsafe waters and failed to broadcast weather

9

information); <u>Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.</u>, 462 F.Supp. 485, 490 (E.D.La. 1978) (time charterer liable for injury to passenger during navigation in rough seas when time charterer affirmatively decided to encounter the weather); <u>Turner v. Japan Lines, Ltd.</u>, 651 F.2d 1300 (9th Cir. 1981) (Under clause of charter party, the time charter is responsible for the "load, stow, trim and discharge"...time-charterer was responsible for injuries sustained by off-loading longshoreman, who was severely injured when a defective stow collapsed); and <u>Fernandez v. Chios Shipping</u>, 542 F.2d 145 (2d Cir. 1976) (improper discharge of cargo, was within scope of responsibilities shifted from shipowner to time charterer by clause of time charter, and time charterer was obligated to indemnify shipowner).  These cases are readily distinguishable from the instant matter.  Even though the time charterer was found liable in each case, courts uniformly hold that in order for liability to attach to a time charterer, it is critical that there be an independent act of negligence that is the direct cause of the injury or that the time charter agreement specifically allocates the responsibilities to the time charterer.  See <u>Klishewich v. Mediterranean Agencies, Inc.</u>, 302 F.Supp. 712 (D.C.N.Y. 1969) ("Time charterer assumes no liability flowing from unseaworthiness of vessel or negligence of crew unless it is shown that parties to charter intended otherwise").  Here, even accepting as true the evidence that Weeks proffers,

10

there is no evidence showing that the injury to Weeks's barge was due to Hanjin's independent negligent acts.  Additionally, as discussed above, there is no evidence that the parties agreed to shift liability to the time charterer under these circumstances.

Weeks contends that there are genuine issues of material fact pointing to Hanjin's independent tort liability which preclude this court from granting summary judgment.  Pl. Memo of Law at 2.  Weeks argues that Hanjin, either directly or through its local agent, was negligent in the manner which it *instructed* the M/V HANJIN to berth for discharge at berth 86, a berth that did not have bollards for the vessel to tie up alongside, making it necessary to shift the vessel to discharge at berth 96.  Id. Weeks maintains that due to the incorrect berthing instruction, the vessel was forced to move, causing the accident.  Id.  In support of this position, Weeks's attorney, Todd Kenyon, submitted a sworn declaration, pursuant to 28 U.S.C. § 1746, declaring that the documents attached to his declaration are true and correct copies of records that have been produced in discovery by Hanjin.  Pl. Declaration at 1-2.  In response, Hanjin moves to strike the evidence proffered by Mr. Kenyon because the documents are unsigned and unsworn.  See FED. R. CIV. P. 56(e) ("...Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith..."); Def. Reply Memo of Law at 7.  Even though the supporting documents provided by Weeks technically do not

11

satisfy the requirements stipulated in the Federal Rules of Civil Procedure, the court will examine each document, without striking any of them from the record.

The first supporting document, titled "Exhibit 1," is a report by the master of the M/V HANJIN describing the circumstances surrounding the collision.  This report was translated from Greek into English, it is unsworn, unsigned and not certified.  Pl. Ex. 1.  In this letter, the master describes the incident and then sets forth three theories as to why the collision occurred.  Id.  First, the master states in paragraph "a" that "The tugboats were not reacted properly either due to inadequate instructions by the pilot or due to probable misunderstanding between them."  Id. ¶ a.  However, there are no specific facts showing that Hanjin or its agent were in control of the tugboats or the pilots.  See FED. R. CIV. P. 56(e) ("...[An] adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial...").  Regardless, it has been well established in admiralty law that a time charterer is not responsible for the negligent acts of the pilot or tugboats, absent a showing of independent negligence.  See Kerr-McGee Corp., 830 F.2d at 1341 ("It is well-established that the time charter[er] is not responsible for navigational errors committed by the pilot").  See, e.g., Continental Oil Co. v. Bonanza Corp.,

12

706 F.2d 1365, 1372 (5th Cir.1983) ("A time charterer who does not control the operation or navigation of the chartered vessel is not responsible for the consequences of the vessel owner's negligence"). Second, the master states in paragraph "b" that the hazardous positioning of barges between berth 86 and 96 created "an additional hazard to navigat[ion]." Pl. Ex. 1 ¶ b. As Hanjin points out in its Reply Memorandum of Law, the barges mentioned in the master's report are the plaintiff's, Weeks, barges. Def. Reply Memo of Law at 9. Hanjin contends that they cannot be held liable for the improper positioning of Weeks's own barges. Id. It is correct. Third, the master states in paragraph "c" that he has no knowledge as to why the vessel was sent to the wrong berth, which contained no bollards, and then asserts that "but for" the fact that the vessel first went to berth 86 and was subsequently moved to berth 96, the collision would have never occurred. Pl. Ex. 1 ¶ c. Notwithstanding the fact that this evidence may establish "but for" causation, this court is controlled by the United States Supreme Court's ruling in Exxon Company U.S.A. v. Sofec, Inc., 517 U.S. 830 (1996), which adopts the doctrine of superceding cause in admiralty tort cases. The Court in Exxon explained:

> "'The doctrine of superseding cause is...applied where the
> defendant's negligence in fact substantially contributed to
> the plaintiff's injury, but the injury was actually brought
> about by a later cause of independent origin that was not
> foreseeable. *It is properly applied in admiralty
> cases*....Superseding cause operates to cut off the liability

of an admittedly negligent defendant...." Id. at 837 (quoting Schoenbaum, *Admiralty and Maritime Law*, § 5-3, pp. 165-166 (2d ed. 1994)). (emphasis added).

Since it is undisputed that the collision occurred *after* the vessel departed from berth 86 and was en route to berth 96, the doctrine of superceding proximate cause negates any alleged prior independent negligence by Hanjin or its agents. See Pl. Ex. 3 at 8; Def. Reply Memo of Law at 8.

In addition, the master's letter points out that a "man," without identifying who the man was or worked for, instructed the vessel to move from berth 86 to 96. Pl. Ex. 1. This evidence clearly does not meet the non-moving party's burden of setting forth "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

The second supporting document, titled "Exhibit 2," is a telefax from the manager of the M/V HANJIN to Hanjin. This telefax is unsworn, unsigned and not certified. See FED. R. CIV. P. 56(e). The telefax states, "The vessel, for all port/berthing/tugging/cargo operations, is(was) in the hands and arrangements of her [time charters] and/or their local agents." Pl. Ex. 2 ¶ a. This statement is in direct contradiction to paragraph 26 of the time charter contract, which states, "Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers...owners to remain responsible for the navigation of the vessel, **acts of pilot and tugboat, etc.**...crew, and all

14

other matters..."  Time Charter Contract ¶ 26.  There is no
evidence in the record of an amendment, revocation or transfer of
title in the contract that would alter ownership of the vessel or
reallocate each party's responsibilities during the charter
period.  Thus, at the time the collision occurred, this contract
governed the relationship between Hanjin and the owner of the M/V
HANJIN.

The third supporting document, titled "Exhibit 3," is a
report from Hanjin's surveyor.  However, this report does not
establish specific facts evincing negligence arising out of an
independent act by Hanjin.  Rather, this report simply
memorializes and explains the undisputed material facts
previously discussed in other parts of the record.  This exhibit
does not support new and specific facts that show a genuine issue
for trial.  See FED. R. CIV. P. 56(e).

### III. CONCLUSION

The supporting materials in opposition to this motion and
all reasonable inferences therefrom favorable to the non-moving
party provide no evidence that establishes Hanjin's independent
tort liability.  See Goodman, 534 F.2d at 573.  Accordingly,
Hanjin, as time charter, cannot be held liable.  Pursuant to FED.
R. CIV. P. 56(e), Weeks, as the responding party to the motion
for summary judgment has not met its burden.  Therefore, Hanjin's
summary judgment motion is GRANTED, and Weeks's complaint is

15

dismissed as to Hanjin.

/s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

Dated: July 11, 2005

16